sales agent of, the Siegel-Cooper Company.   This conversation was repeated by Cox in this language:

"Mr. Doherty said * * * that he would consent to the giving of a chattel mortgage provided Siegel-Cooper Company would hold it, and Mr. Anway interrupted me and said that would void the mortgage, 'You can't do anything of that kind.' I said: 'There is no use of discussing the thing any further.' Mr. Levy then said: 'You misunderstand it. Mr. Doherty meant that we give a chattel mortgage and let Mr. Anway hold it in escrow until the time that we agree upon, and either deliver it, or file it or return it to us, as we are just about closing these negotiations looking to the raising of this money, and the money will be on hand long before the time you need to put this mortgage on record.' I asked Mr. Anway whether that was in order, and he said it was, and I then said: 'That is all right. Now as to the terms of the payment.' We went into details of how the indebtedness was to be paid off, in the different installments."

Whatever may be said as to the validity of the agreement, as effecting a delivery in escrow, and irrespective of the question whether a chattel mortgage is ·capable of such a delivery under the circumstances detailed, one thing is clear: The manifest object of the parties was not so much to delay delivery as to avoid filing. The Hotel Regent Company was endeavoring to raise a loan, and the record of a chattel mortgage would, as stated by its president at the conversation referred to, "materially affect the getting of this money." The delivery to Anway left no condition to be fulfilled by the Siegel-Cooper Company. The Hotel Regent Company assumed no condition other than the payment of its indebtedness, an obligation already existing and enforceable. There was nothing to be done by the Siegel-Cooper Company to perfect title to the mortgage or to complete the delivery. The only condition rested on the Hotel Regent Company, the performance of which would defeat delivery. Under these circumstances the delivery to Anway was an unconditional delivery to the Siegel-Cooper Company. The statute has been construed in favor of creditors along the broadest lines and in accordance with the most liberal principles of statutory construction. Technicalities have given way to equities; limitations to liberality. The statute contemplates protection to creditors against secret arrangements to withhold the filing of chattel mortgages. It commands publicity. The recognition of an agreement such as the one upon which the defendant relies would not only circumvent the statute, but would facilitate results which it was designed to prevent. The failure of the Siegel-Cooper Company to file the chattel mortgage in question, within a reasonable time after its execution and delivery, renders it void as against the plaintiff, and the relief prayed must be granted.

Judgment for plaintiff, without costs.

---

(121 App. Div. 587.)

## JENNINGS v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. October 23, 1907.)

1. EVIDENCE—PRESUMPTIONS.

The allegation that defendant had an electric railroad through a certain street for the carriage of passengers having been admitted, it will be presumed that a car running on such track, which injured plaintiff, belonged to defendant.

**2. SAME—EXCLUSIVE POSSESSION.**

Where defendant admitted that it had an electric railroad on a certain street, it will be presumed that its exclusive use of the tracks on such street continued.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 87.]

Appeal from Municipal Court, Borough of Brooklyn, First District.

Action by Thomas Jennings against the Brooklyn Heights Railroad Company. From a Municipal Court judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before HIRSCHBERG, P. J., and HOOKER, GAYNOR, RICH, and MILLER, JJ.

Alfred L. Marilley, for appellant.

H. F. Ives, for respondent.

GAYNOR, J. The allegation of the complaint that the defendant had an electric railroad through Thirty-Ninth street for the carrying of passengers having been admitted by the answer, the court below could not presume that some other railroad company also ran its cars over the defendant's tracks. It was therefore not necessary for the plaintiff to show that the car that hurt him was the defendant's. That fact followed from the fact that the railroad tracks were the defendant's. If there was evidence of the cars of another company running over the defendant's tracks, the case might be different; but that fact is not to be presumed. The presumption is to the contrary, i. e., that the defendant's possession is exclusive, just as much as the presumption is that my possession of my house is exclusive. There is no presumption that I have let a floor or a room to any one. No other company could be running cars over the defendant's tracks except by its consent. Railroad Law, Laws 1890, p. 1113, c. 565, § 102. Its right and possession must at first have been exclusive, and the presumption is of continuance, not of change. Lawson on Presumptive Evidence, c. 8.

The judgment should be reversed.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide events. All concur.